UNITED STATES of America,

v.

**Michael P. OSHATZ and Leonard A. Messinger, Defendants.**

**No. 87 Cr. 1000 (RWS).**

United States District Court, S.D. New York.

June 13, 1989.

Benito Romano, U.S. Atty., for the Southern District of New York, New York City, for U.S. of America; by Robert

Cleary, Christine Gray, Asst. U.S. Attys., of counsel.

Slotnick & Baker, New York City, for Defendant Michael P. Oshatz; by Barry Ivan Slotnick, Mark Baker, of counsel.

Fischetti Pomerantz & Russo, New York City, for defendant Leonard A. Messinger; by Ronald P. Fischetti, Ronald Russo, of counsel.

## OPINION

SWEET, District Judge.

After an eleven week trial and five hours of deliberations, a jury convicted defendant Michael P. Oshatz ("Oshatz") on one count of conspiracy and fourteen counts of tax fraud and defendant Leonard Messinger ("Messinger") on one count of conspiracy and nine counts of tax fraud. Both defendants have moved under Rule 33, Fed.R. Crim.P., for an order granting a new trial or permitting defense counsel to interview jurors regarding their deliberations, claiming that the jurors failed to observe the court's instruction not to deliberate before the close of the case and that the jurors rushed their deliberations to meet their vacation and employment obligations. For the reasons set forth below, the motion is denied.

### The Facts

The defense retained Neil Tipograph ("Tipograph"), a Certified Public Accountant, to review documents to be offered at trial, and Tipograph appeared in the courtroom at or near the defense table on various occasions during the trial.

Several months after the trial ended, a woman approached Tipograph while he was standing in a parking lot in Manhattan and introduced herself as a member of the jury that had convicted Oshatz and Messinger. In his affidavit, Tipograph describes this encounter as follows:

4. Apparently recognizing me as having been connected to the defense, the juror volunteered to me that after Edward Markowitz ["Markowitz"] [the promoter of the fraudulent tax shelters that gave rise to the indictment and the government's principal fact witness] had

testified, all the jurors' minds were made up and the jury believed the defendants were guilty.

5. She added that all the jurors had been very annoyed about the length of the trial since they either had vacations which were planned or had to get back to work. They therefore deliberated quickly in order to get it over with.

6. The juror, who expressed regret to me about the jury's actions in that regard, stated that she went along because she had not wanted to "rock the boat."

Tipograph Aff. at 1–2.

Oshatz and Messinger contend that Tipograph's affidavit requires a new trial or an investigation for two reasons. First, by making up their minds after Markowitz's testimony, the jurors may have violated the court's instruction that they not discuss the evidence until the close of the case, including the defendants' summations. Second, to the extent the jurors rushed their deliberations to meet vacation and work obligations, they may have been responding to improper external pressure from spouses or employers.

### Post–Verdict Investigation of Jurors

Rule 606(b) of the Federal Rules of Evidence provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Although Rule 606(b) recognizes that certain circumstances warrant post-verdict

scrutiny of a jury's conduct, courts generally are reluctant "to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). The Second Circuit recently identified the important policies underlying this reluctance:

> [p]ost-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts.

*United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir.1989). Accordingly, courts will hold post-verdict hearings only when the defendant presents "clear, strong, substantial and incontrovertible evidence ... that a specific, nonspeculative impropriety has occurred...." *Moon*, 718 F.2d at 1234; *see also King v. United States*, 576 F.2d 432, 438 (2d Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978). Courts will not grant a defendant a post-verdict investigation "merely to conduct a fishing expedition." *United States v. Moten*, 582 F.2d 654, 667 (2d Cir.1978).

Applying that strict standard here, Tipograph's affidavit contains insufficient evidence to warrant a post-verdict investigation. Although the juror told Tipograph that the jurors had made up their minds after Markowitz's testimony, she did not say whether the jurors in fact deliberated following Markowitz's testimony or at any other time prior to the close of the case. Her statement to Tipograph hardly constitutes "clear, strong, substantial and incontrovertible evidence" that the jurors deliberated prematurely. Even if they did, however, that would not necessarily require further investigation—the defendants cite no federal case in which premature deliberations required a new trial.

Moreover, Tipograph's affidavit contains little evidence that external influence improperly was brought to bear on the jury. Read most favorably, the affidavit consti-

tutes the first link in a speculative chain of reasoning requiring this court to conclude that a spouse or employer told one of the jurors to rush deliberations so he or she could start vacation or return to work sooner, that the juror revealed this threat to the other members of the jury, and that they in turn—in violation of their oaths as jurors—agreed to hasten their deliberations to accommodate this individual's needs. However, this reasoning is far too speculative to meet the strict standard the Second Circuit has articulated for ordering a post-verdict inquiry.

Moreover, a more reasonable interpretation of the juror's remarks indicates that they bear upon a "matter or statement occurring during the course of the jury's deliberations" or "concern[ ] the juror's mental processes." Fed.R.Evid. 606(b). However, Rule 606(b) bars absolutely post-verdict consideration of these matters.

*Conclusion*

For the reasons set forth above, the defendants' motion for a new trial or a post-verdict investigation is denied.

It is so ordered.