**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-11046

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SOLAH KASSEM ABOU-KASSEM,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

March 7, 1996

Before POLITZ, Chief Judge, JONES and BENAVIDES, Circuit Judges.

POLITZ, Chief Judge:

Convicted of hostage-taking, 18 U.S.C. § 1203(a); attempted air piracy, 49 U.S.C. § 1472; unlawful possession of a firearm by an undocumented alien, 18 U.S.C. § 922(g)(5); and use of a firearm in crimes of violence, 18 U.S.C. § 924(c)(1), Solah Kassem Abou-Kassem first was sentenced provisionally to imprisonment for the statutory maximum for the purpose of hospitalization and treatment for a mental condition. Ultimately he was given a final sentence of 65 years imprisonment, with due credit for time served. He appeals his conviction and sentence. For the reasons assigned we affirm.

Background

On January 5, 1987, Abou-Kassem double-parked his vehicle at the American Airline

terminal at Dallas-Fort Worth International Airport and rode the AirTrans to the Delta terminal. He went directly to the ticketing area where he physically seized a young boy, pointing a loaded pistol to the child's head. When the child's father reacted, Abou-Kassem fired the pistol into the ceiling and loudly threatened to kill the child. With the child in tow, Abou-Kassem entered the "secured" area of the terminal followed by several security officers responding to an alert. An eight-hour standoff followed during which Abou-Kassem used the child as a shield, kept his pistol pointed at either the child's head or heart, and repeatedly threatened to kill the child, and sometimes himself, unless an airplane was made available and he was assured safe passage to Egypt.

After intensive negotiations between Abou-Kassem and specially-trained officers, the terms for the boy's release were reached, an aircraft was brought into Abou-Kassem's view, and he was given a written assurance by an Immigration official that he would have safe passage to a country of his choice. Abou-Kassem released the child and put his pistol down. As soon as the child reached safety, several officers moved quickly to arrest Abou-Kassem who grabbed his pistol but was subdued before he could fire it.

Abou-Kassem initially was charged by a complaint, promptly followed by a nine-count indictment for hostage-taking, attempted air piracy, unlawful possession of a firearm by an alien, and use of a firearm in a crime of violence. He moved for a medical examination to determine his competency to stand trial.[1] Following a hearing the trial court

_____

[1]18 U.S.C. § 4241 states, in relevant part:

(a) At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. . . .
(d) If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and

found him competent to stand trial. At trial Abou-Kassem offered evidence of his mental illness at the time of the offenses and advanced a defense of legal insanity. The court dismissed as duplicitous one attempted air piracy count and one use of a firearm in a crime of violence count. At close of the evidence the court denied a motion for a judgment of acquittal and the jury returned verdicts of guilty on the seven counts submitted to it.[2]

Before sentencing, Abou-Kassem moved for an evaluation of his then-current mental condition. Following a hearing held in accordance with 18 U.S.C. §§ 4244[3] and 4247,[4] the court determined that Abou-Kassem was then suffering from a mental disease and committed him to the custody of the Attorney General for hospitalization in a suitable facility for appropriate care or treatment in lieu of a final sentence. The order constituted a provisional sentence of imprisonment for the statutory maximum period, life plus 40 years.[5] The order directed that upon Abou-Kassem's recovery from his mental impairment he was to be returned to court for final sentencing.

---

consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

[2]The court dismissed as duplicitous one attempted air priacy count and one use of a firearm in a crime of violence count.

[3]18 U.S.C. § 4244 pertinently provides:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for care or treatment in a suitable facility. Such a commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty.

[4]Section 4247 sets forth, *inter alia*, definitions, the mental health professionals authorized to perform evaluations, and the proper form of the reports.

[5]18 U.S.C. § 4244(d).

3

In October 1992, the Warden of the United States Medical Center in Springfield, Missouri submitted to the district court a certificate stating that Abou-Kassem had sufficiently recovered from his mental difficulty and no longer required custody for care and treatment.[6] Abou-Kassem sought a determination of his then-current mental condition and, after a hearing, the court again determined that he suffered from a mental disease or defect requiring confinement for care and treatment and recommitted him for continued hospitalization.

In October 1994 the trial court received a certification that Abou-Kassem had recovered sufficiently from his mental disease or defect so as to permit sentencing. At the sentencing hearing the government moved to dismiss one hostage-taking count and two counts for use of a firearm in a crime of violence. As a consequence of concurrent sentences on three of the counts, and a consecutive sentence on the fourth, Abou-Kassem was sentenced to 65 years imprisonment, subject to a credit for time served on the provisional sentences. He timely appealed.[7]

Analysis

A.      Competency to Stand Trial and Hospitalization of Convicted Persons

A person is deemed incompetent "[i]f, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his

---

[6]18 U.S.C. § 4244(e).

[7]Prior to final sentencing Abou-Kassem filed several motions for relief under 28 U.S.C. § 2255. An appeal from the denial of one of those motions previously was consolidated with this appeal. The order consolidating the two appeals was vacated, however, and that appeal was dismissed as moot.

4

defense . . . ."[8]  One convicted may be committed to the custody of the Attorney General "[i]f, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment . . . . Such a commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the offense for which the defendant was found guilty."[9]

Abou-Kassem maintains that there is a fatal inconsistency between the trial court's *in limine* determination that he was competent to stand trial and its post-verdict, presentencing orders that he was in need of hospitalization for treatment for a mental disease or defect before he could be sentenced.  We do not agree.  The relevant standards differ. Under section 4241 the court may grant relief from trial if it "finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[10] Under section 4244 the court may grant relief from sentencing if it "finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment."[11]  The standard under section 4241 asks more and is significantly more onerous than the relevant test under section 4244.

---

[8]18 U.S.C. § 4241(d); **United States v. Dockins**, 986 F.2d 888 (5th Cir.), <u>cert</u>. <u>denied</u>, 114 S.Ct. 149 (1993).

[9]18 U.S.C. § 4244.

[10]18 U.S.C. § 4241(d).

[11]18 U.S.C. § 4244(d).

Abou-Kassem contends that the use of different standards to determine competency to stand trial, and the need for hospitalization pending final sentencing, violates his due process and equal protection rights. He offers neither reasoned explanation nor citation of authority to support the due process complaint and it is deemed abandoned.[12] To establish the equal protection claim Abou-Kassem must demonstrate that similarly situated persons are subject to disparate treatment without a rational basis.[13]

We are not necessarily persuaded that persons incompetent to stand trial and persons competent to stand trial but who suffer from a mental disease or defect at time of sentencing are similarly situated.[14] Were we to assume, *per arguendo*, that they were similarly situated, what appears to be disparate treatment would be supported by legitimate governmental interests. We refer to the governmental interests in: (1) protecting mentally ill prisoners who might be at substantial risk if placed in the general prison population; (2) ensuring the safety of other inmates; and (3) providing humanitarian treatment for mentally ill inmates.

B.      Insanity Defense

Abou-Kassem claims error in the denial of his motion for judgment of acquittal, contending that he established by clear and convincing evidence that he suffered from a

---

[12]See **United States v. Heacock**, 31 F.3d 249 (5th Cir. 1994).

[13]**United States v. Roberts**, 915 F.2d 889 (4th Cir. 1990), cert. denied, 498 U.S. 1122 (1991).

[14]**Id.** at 891-92 (emphasis in original) ("Those defendants subject to §§ 4244 . . . and 4241 (which refers to persons incompetent to stand trial) are not similarly situated. Section 4241 applies to defendants found to be mentally incompetent to stand trial. Section 4244 applies to competent persons found to be suffering from a mental disease prior to sentencing . . . . Clearly those statutes apply to different types of mentally ill patients who cannot be lumped together into a group consisting of people with mental problems facing federal prosecution.").

severe mental disease at the time of the offenses. A person is legally insane if "as a result of a severe mental disease or defect, [he] was unable to appreciate the nature and quality or the wrongfulness of his acts. [Otherwise a m]ental disease or defect does not . . . constitute a defense."[15]

We review the denial of a motion for judgment of acquittal based on insanity in the light most favorable to the government. Insanity is an affirmative defense for which the defendant bears the burden of proof.[16] Accordingly, we may reject the jury's finding on this issue "only if no reasonable trier of fact could have failed to find that the defendant's criminal insanity at the time of the offense was established by clear and convincing evidence."[17]

Abou-Kassem presented evidence of his mental condition, including the testimony of family members, friends, and two doctors, both of whom testified that Abou-Kassem suffered from paranoid schizophrenia. They further testified that persons so afflicted experience, *inter alia*, delusions, auditory and visual hallucinations, and skewed thought processes. Notwithstanding this evidence, a reasonable trier of fact could have determined that Abou-Kassem failed to prove by clear and convincing evidence that he was unable to appreciate the nature and quality or the wrongfulness of his acts. We perceive no error.[18]

C.      Constitutionality and Application of Rule 704(b)

---

[15]18 U.S.C. § 17.

[16]**United States v. Barton**, 992 F.2d 66 (5th Cir. 1993); 18 U.S.C. § 17.

[17]**Id.** at 68-69.

[18]Abou-Kassem contends that because the government did not offer any rebuttal evidence or contrary expert opinions, the evidence conclusively shows that he was legally insane at the time of the offense. Abou-Kassem had the burden of proof; the government was not required to offer rebuttal evidence or contrary expert opinions. **Id.**

Abou-Kassem maintains that Federal Rule of Evidence 704(b) is unconstitutional and that it was applied improperly. Specifically, he claims the court should have allowed the expert witnesses to testify whether he was legally insane at the time of the offense.

Rule 704(b) provides that:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

We agree with our colleagues in the Tenth Circuit that Rule 704(b) violates neither due process nor equal protection.[19] We review the district court's application of Rule 704(b) for abuse of discretion.[20] The defense experts were permitted to testify about Abou-Kassem's mental disease as well as the characteristics and symptoms thereof. He complains that the experts were not permitted to testify specifically about whether he was "sane" at the time of the offense. That testimony was barred by Rule 704(b). The district court did not abuse its discretion in so ruling.

D.    Forced Medication

Abou-Kassem claims that he was denied due process because he was sedated forcefully from the time of his arrest through the time of trial. He contends that the medication prevented him from presenting adequately his insanity defense because it made him unable to testify and communicate with his counsel. Abou-Kassem did not raise this issue in the trial court and we review only for plain error.[21]

---

[19]**United States v. Austin**, 981 F.2d 1163 (10th Cir. 1992), cert. denied, 113 S.Ct. 1859 (1993).

[20]**United States v. Masat**, 896 F.2d 88 (5th Cir. 1990).

[21]See **United States v. Calverley**, 37 F.3d 160 (5th Cir. 1994) (*en banc*), cert. denied, 115 S.Ct. 1266 (1995).

8

The record reveals that Abou-Kassem was not sedated forcefully but, rather, willingly took the medication for his mental illness. Further, the record is devoid of any indication that he was unable to testify or communicate with his counsel.

E.     **Batson** Claim

We next consider whether the prosecution exercised one of its peremptory challenges in a racially motivated manner in violation of **Batson v. Kentucky**.[22] The government states that Abou-Kassem's **Batson** objection was untimely. Before we may proceed further, that threshold barrier must be addressed. A **Batson** objection must be made before the venire is dismissed and before commencement of trial.[23] Abou-Kassem raised the **Batson** objection and moved for mistrial after the venire panel was dismissed. The objection was untimely; no relief is warranted.[24]

F.     Right to a Speedy Trial

Abou-Kassem maintains that he was denied his sixth amendment right to a speedy trial by the seven-year delay between his conviction and final sentencing. The constitutionally guaranteed right to a speedy trial applies to sentencing.[25] We review sentencing delays under **Barker v. Wingo**[26] for length of delay, prejudice, whether the defendant asserted his right, and the reason for the delay.[27] If a delay is attributable to the

---

[22]476 U.S. 79 (1986).

[23]**United States v. Romero-Reyna**, 867 F.2d 834 (5th Cir. 1989), <u>cert</u>. <u>denied</u>, 494 U.S. 1084 (1990).

[24]<u>See</u> **United States v. Maseratti**, 1 F.3d 330 (5th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 1096 (1994); **Romero-Reyna**.

[25]**United States v. Howard**, 577 F.2d 269 (5th Cir. 1978).

[26]407 U.S. 514 (1972).

[27]**Howard**.

9

defendant, we may consider waiver under the standard waiver doctrine.[28]

Sentencing was delayed because Abou-Kassem filed, after his conviction, a motion to determine his then-mental condition. Abou-Kassem thus initially waived his entitlement to a speedy sentencing. After he was committed under section 4244 he asserted his right to a speedy sentencing in his 28 U.S.C. § 2255 motion. The **Barker** factors counsel against finding a violation. The hospitalization of a mentally ill prisoner sufficiently supports the delay, as does the lack of prejudice. We again note that he received full credit for the time served under the provisional sentence.

G.    Timing for Appeal

Finally, Abou-Kassem complains that the commitment process under section 4244 denied him the right to appeal his conviction for approximately seven years. This charge mandates our careful consideration. The essential issue is whether a provisional sentence imposed pursuant to 18 U.S.C. § 4244 is "final," thereby vesting the appellate court with jurisdiction under 28 U.S.C. § 1291. This issue is *res nova* for us.

The Supreme Court has indicated inferentially that a criminal defendant has the right to appeal his conviction after the trial court imposes a provisional sentence under section 4244.[29] At that point, the litigation should be deemed final as to the "bottom line" question

---

[28]**Barker**.

[29]See **Corey v. United States**, 375 U.S. 169 (1963) (the Court held that a defendant may take an appeal from a conviction and sentence imposed pursuant to now-repealed 18 U.S.C. § 4205(b) either at the time of the imposition of the first maximum sentence or after completion of the study provided by the statute and imposition of the final sentence by the court); see also **United States v. Donaghe**, 924 F.2d 940 (9th Cir.), cert. denied, 502 U.S. 871 (1991) (relying on **Corey** the court held that a provisional sentence imposed pursuant to 18 U.S.C. § 3552(b) is appealable). But see **United States v. Muther**, 912 F.2d 1371 (11th Cir. 1990) (the court held that a provisional sentence imposed pursuant to 18 U.S.C. § 3552(b) is a non-final order and is not appealable).

of the guilt of the defendant.[30]  On close examination, we find apparent that a provisional sentence under section 4244 has both vital indicia of finality:  (1) the defendant has been convicted of the crime(s) charged, and (2) the defendant is committed to the custody of the Attorney General.  Were we to accept the opposing view, we would be countenancing the totally unacceptable proposition that a defendant could be incarcerated for many years, as was Abou-Kassem, without a meaningful opportunity to challenge timely the validity of his conviction.[31]  This we reject.

We therefore hold that a defendant may appeal the conviction, in accordance with the Federal Rules of Appellate Procedure, after the court imposes a provisional sentence.  At that time, the defendant also may appeal the propriety of the provisional sentence.  If the defendant does not timely appeal the conviction after imposition of the provisional sentence, an appeal thereof may be taken after imposition of the final sentence, with or without an appeal of the final sentence.[32]

Abou-Kassem did not seek an appeal of his conviction after imposition of either provisional sentence.  He did, however, raise this issue in his 28 U.S.C. § 2255 motion and herein.  In light of today's ruling that he had the right to appeal his conviction after imposition of the provisional sentence, in accordance with controlling precedent he was entitled to be informed about his appeal rights when the district court imposed the provisional sentence.  He was not so informed.  He was not prejudiced by that failure,

---

[30]**Corey**, 375 U.S. at 174 (quoting **Heike v. United States**, 217 U.S. 423 (1910)).

[31]See **id.** at 173 (the Court in **Corey** was concerned that precluding an appeal after imposition of the initial sentence could lead to "the imposition of . . . a mandatory three- or six-month term of imprisonment before the defendant could file an appeal," a result that "might raise constitutional problems of significant proportions.").

[32]See **id.** (a defendant can appeal after imposition of the initial or final sentencing).

however, in light of today's disposition of the merits. We remind and underscore for courts imposing provisional sentences that the defendant must be notified of his/her option to appeal immediately, as described herein, in addition to the standard advice typically given in conjunction with imposition of sentence.

The defendant's convictions and final sentence are AFFIRMED.