UNITED STATES of America,

v.

**Vincent GIGANTE, Defendant.**

**No. 93 CR 368.**

United States District Court,
E.D. New York.

May 19, 1999.

Zachary W. Carter, United States Attorney, Eastern District of New York by Andrew Weissmann, Assistant United States Attorney, George Stamboulidis, Assistant United States Attorney, Daniel S.

Dorsky, Assistant United States Attorney, Brooklyn, NY, for the United States.

Culleton, Marinaccio & Foglia by Michael A. Marinaccio, James J. Culleton, White Plains, NY, Steven R. Kartagener, New York City, for the Defendant.

*MEMORANDUM AND ORDER*

WEINSTEIN, Senior District Judge.

I. INTRODUCTION

The defendant seeks an order permitting him to ask the jurors who tried this case in 1997 about possible improper influences that may have affected their verdict and about possible violations of the court's injunction not to discuss the case except during deliberations. A conviction had resulted in a long prison term. *See United States v. Gigante*, 989 F.Supp. 436 (E.D.N.Y.1998) (sentencing); 996 F.Supp. 194 (E.D.N.Y.1998) (defendant competent to be sentenced); 982 F.Supp. 140 (E.D.N.Y.1997) (post-verdict motions), *aff'd*, 166 F.3d 75 (2d Cir.1999); 971 F.Supp. 755 (E.D.N.Y.1997) (testimony of witness by two-way closed circuit television), *aff'd*, 166 F.3d 75 (2d Cir.1999); 987 F.Supp. 143 (E.D.N.Y.1996) (defendant competent to stand trial); 925 F.Supp. 967 (E.D.N.Y.1996) (directions to experts); 166 F.R.D. 3 (E.D.N.Y.1996) (bail), *aff'd*, 85 F.3d 83 (2d Cir.1996). For the reasons indicated below the motion must be denied.

II. FACTS

The defendant has produced a witness who had been a driver for a group of three jurors and one alternate during and after the trial. This driver made declarations out of court, and gave testimony in court, alleging that the jurors had discussed the case in groups before and during deliberations and had been influenced by the views of an alternate.

The court had taken precautions to ensure juror anonymity. It utilized written jury questionnaires. Neither the defense nor the prosecution was aware of the juror's names or addresses. Jurors and alternates were driven between their homes and the courthouse in order to preserve their privacy.

The court utilized privately retained drivers because there were not enough marshals available. This hearing demonstrates some of the dangers attendant upon privatization of such services. *See, e.g.,* David A. Sklansky, *The Private Police,* 46 UCLA L.Rev. 1165 (1999). Government employees tend to be better trained and subject to stricter discipline.

The drivers used in this case were under the supervision of the United States Marshal's Service. They were instructed not to permit jurors to discuss the case in their cars and to report any discussions. No reports of juror discussions were made to the Marshal's Service or to the court.

Along with the driver's testimony, the defendant also produced tapes and transcripts of declarations made by this witness in conversations with private persons. These out-of-court statements by the driver were unauthorized. They indicate that the witness provided information to his auditors, subsequent to the verdict, that may have led to the revelation of the name and address of one juror. The witness indicated in these conversations that jurors had repeatedly violated the court's injunction not to discuss the case except in the jury room during deliberations. He also suggested that some of the jurors were frightened when the defendant's family members in court stared at them angrily.

The recordings and the transcripts clearly indicate that the witness made the declarations the defendant alleges he made. The driver's testimony confirms that conclusion. The witness admitted that some of his declarations were lies and puffery designed to impress those to whom he was speaking. Much of his court testimony appeared to be an effort to justify his earlier attempts to build his own "prestige" through his connection with this notorious case.

## III. LAW

There is substantial common law history dealing with post-verdict inquiries of jurors. That law has now been embodied in Rule 606(b) of the Federal Rules of Evidence entitled "Inquiry into validity of verdict or indictment." It provides in part:

> Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith ....

This portion of the Rule applies to the period of deliberations. The court may not consider a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying. *See id.*

Rule 606(b) also permits the court to determine if any "outside influence was improperly brought to bear upon any juror." *See id.* That authority is the basis for defendant's application. If an alternate who was to be discharged before deliberations applied intellectual pressure on the jurors through discussions about the case, that might be deemed an "outside" influence.

While deliberations are protected, a juror may testify on the question of "whether extraneous prejudicial information was improperly brought to the jury's attention." *See* Rule 606(b). There is no contention that improper "information" was brought to the attention of the jury except through discussions of the evidence with an alternate. It seems conceded that the jury had as "information"—that is to say evidence, arguments of the lawyers and instruction by the court—only what they heard in court.

■ Rule 606(b) embodies a strong policy to protect jurors against any attempt to interfere with their independence. The court has no more power than anyone else to interfere with the jurors' deliberations or to attempt to improperly influence them. Courts have recognized this principle since at least the time of "Bushel's case" in 1670. *See* Thomas A. Green, *Verdict According to Conscience* 236–48 (1985).

The most useful precedent is *United States v. Williams–Davis*, 90 F.3d 490 (D.C.Cir.1996). *Williams–Davis* involved predeliberation discussions by jurors. It rejected a motion for a hearing. The court held:

> Preserving the finality of jury verdicts militates strongly in favor of barring post-trial juror assertions of pre-deliberation discussion. The probability of some adverse effect on the verdict is far less than for extraneous influences. "[W]hen there are premature deliberations among jurors with no allegations of external influence on the jury, the proper process for jury decisionmaking has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial."

*Williams–Davis*, 90 F.3d at 505 (quoting *United States v. Resko*, 3 F.3d 684, 690 (3d Cir.1993)); *see also United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir.1983) ("It hardly bears repeating that courts are, and should be, hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.").

In cases where far more egregious conduct was alleged than that which the defendant charges here, courts have not allowed inquiry of jurors. *See, e.g., Stockton v. Virginia*, 852 F.2d 740, 747 (4th Cir. 1988); *United States v. Abcasis*, 811 F.Supp. 828, 834 (E.D.N.Y.1992) (predeliberation discussions on guilt or innocence).

In *Stockton* jurors shared rides to the courthouse and discussed the case. The Fourth Circuit pragmatically declared that it is "unrealistic to think that jurors will

never comment to each other on any matter related to a trial." *Stockton*, 852 F.2d at 747; *see also, e.g., United States v. Klee*, 494 F.2d 394 (9th Cir.1974); *United States v. Piccarreto*, 718 F.Supp. 1088, 1092 (W.D.N.Y.1989) ("[E]ven if [predeliberation] conversations on the merits occurred, it would be improper under Rule 606(b) to engage in extensive inquiry as to how these comments affected the jurors during deliberations."); *United States v. Oshatz*, 715 F.Supp. 74, 76 (S.D.N.Y.1989) ("[T]he defendants cite no federal case in which premature deliberations required a new trial.").

In *Klee* the Ninth Circuit realistically declared, " '[n]o normal honest Americans ever worked together in a common inquiry for any length of time with their mouths sealed up like automatons or oysters.' " *Klee*, 494 F.2d at 396 (quoting *Winebrenner v. United States*, 147 F.2d 322, 330 (8th Cir.1945) (Woodrough, J., dissenting)). In the Eastern District, normal honest Americans jurors often do keep their mouths shut as instructed. The impressive jury in the instant case gave every indication that it followed the court's instructions.

## IV. APPLICATION OF LAW TO FACTS

The court found that the witness was not credible with respect to any statements he made to any persons outside of court. His testimony in this court was also not believable. In any event, the evidence of defendant's guilt was overwhelming, and the jury properly followed the court's instructions. The jurors should not be further burdened. Public policy suggests that, like Cincinnatus, they be permitted to retire quietly to their private lives and anonymity, without unnecessary harassment or public inquiries by the court, prosecutors, defense counsel, or any others.

As to statements made before deliberations, there is no credible evidence of improper conduct by the jury or of prejudicial influences upon it. The witness's descriptions of what he heard from other drivers was of doubtful probative force since it was based both upon hearsay and his own non-credible testimony.

Testimony by the witness that the jury may have been influenced by malevolent looks from the defendant's family sitting as spectators is without the slightest foundation. Strict controls by the court were imposed on spectators during the trial.

The same conclusion is reached with respect to any discussions or acts outside the jury room which may have influenced the jury for the period during deliberations. The court finds that they did not exist. The Federal Rules of Evidence do not permit further inquiry about the course of deliberations or concerning the jurors' mental or emotional processes during deliberations. Moreover, the incidents alleged by the witness were too minor to have had any effect on the verdict, even if they had taken place.

While being driven home after the verdict the jurors made no statements that would be admissible in any post-verdict hearing. They could not support a decision allowing interrogation of some or all of the jurors even if they were based upon credible testimony.

 Even if some of the discussions took place, as the witness alleged, with an alternate who did not participate in the ultimate jury deliberations, this does not affect the conclusion that the jurors should not be questioned. The deviations alleged were minor, transient and ephemeral. The passing discussions described by the witness in his endeavor to inflate his own importance would not support further inquiry.

The courts do not expect perfection of its jurors. This jury took its work seriously. It was selected after a meticulous attempt to obtain an impartial panel through extensive written questionnaires and oral voir dire. Credulity would be fractured were the court to conclude that

278

this jury based its decision on the picayune departures described by the witness.

This jury did its job well. It should not be called to account now. Every juror cannot be expected to slavishly follow every judicial injunction over weeks or months of a trial. Members of the jury may from time to time blurt out reactions or express reactions facially as by rolling their eyes, despite the fact that they are not supposed to do so. But these minor deficiencies—even if they exist, and the court finds they did not—could have had no appreciable influence during a trial which took so many days and was so effectively tried by excellent counsel on both sides.

## V. CONCLUSION

The motion for permission to interview jurors or alternates is denied.

SO ORDERED.