**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-20785**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**

**versus**

**LARRY R. DUNCAN,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(94-CR-211-1)**

_____

September 11, 2000

Before WOOD[*], DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[**]

At issue is the authority *vel non* for the district court's *sua sponte* "in the interests of justice" dismissal of a criminal indictment, instead of sentencing Larry R. Duncan, found guilty several years earlier by a jury. We **VACATE** and **REMAND**.

---

[*]Circuit Judge of the Seventh Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Duncan was indicted in September 1994 for: conspiracy to violate the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, by shipping prohibited goods to Libya (count one); violating IEEPA, by aiding and abetting such shipping (count two); and making a false statement on the shippers' export declaration, in violation of 18 U.S.C. § 1001 (count three).

A jury trial was held in November 1995. At the close of the Government's evidence, Duncan moved for judgment of acquittal. The motion was granted as to count three, denied as to the others. The jury found Duncan guilty on those two counts.

Post-verdict, Duncan again moved for judgment of acquittal. In addition, he moved to dismiss the indictment, contending IEEPA was, *inter alia*, an unconstitutional delegation to the Executive of Congress' power to enact criminal statutes.

While the motions were pending, a presentence investigation report (PSR) was prepared. In January 1996, Duncan objected to the PSR; sentencing was set for February. At that hearing, the court stated: "[T]he evidence showed that [Duncan] knew [the goods were] going to Libya and that he ... participated in some elaborate attempt[] ... to disguise the ultimate destination". Sentencing was reset for March, then April.

At the April hearing, however, the court delayed sentencing and instructed the parties to brief the IEEPA constitutionality issue raised in Duncan's motion to dismiss. They did so.

As a condition of release, Duncan was required, *inter alia*, to actively seek employment, remain in the Southern District of Texas, report regularly to pretrial services, and surrender his passport. In November 1996, the court granted Duncan's request that his passport be returned so he could work overseas. That December, the Government moved for a sentencing hearing, noting that the Federal Public Defender (FPD) objected. By letter to the court, Duncan stated he would be unavailable, because he had accepted a job in South America.

As some point, the court ordered Duncan to maintain contact through correspondence. In May 1998, it entered an order relieving Duncan of the requirement to report to pretrial services, retroactive to March 1997.

Duncan continued to correspond with the court. In January 1999, he so advised it he had requested the FPD to prepare "one of those one line court orders for your signature releasing me from that ... bond I'm still under".

In May 1999, approximately three and one-half years after Duncan's conviction, the court set sentencing for 12 July 1999. Duncan failed to appear. Sentencing was reset for the next day.

At the court's request, the FPD, who Duncan had fired, appeared to represent him.

At that hearing, the court, *sua sponte*, suggested dismissing the indictment "in the interest[s] of justice" because, *inter alia*, in the light of Duncan's "five years effective probation", his "[c]onviction ... would accomplish nothing". The FPD had *no* objection. The Government objected, but without stating reasons.

Judgment was entered the next day: "In the interests of justice, counts one and two against Larry R. Duncan are dismissed. The court having acquitted Duncan on count three, this is a final judgment". Prior to entering judgment, the court had *not* ruled on either Duncan's post-verdict motion for judgment of acquittal or his motion to dismiss.

## II.

The brief, above-referenced colloquy at the May 1999 sentencing hearing follows:

> THE COURT: We got together after a considerable time at my request to inquire whether after Mr. Duncan's having been on *pretrial release for five years effective probation, whether there is any utility to enter ... a judgment of a conviction and a sentence that will in all likelihood be simply time served.*
>
> ....
>
> My proposal is that all that would be gained by further proceedings here would be a judgment of conviction which in itself would be disproportionate until the sentence is received by Kirk [and Be]ckford ... of D&[G] Oil Field Services, Petroserve, and Mr. Duncan

as the engineering daunts [sic] for the operation has already been extensively punished by having to stand trial and to be under court supervision for five years. Conviction, itself, would accomplish nothing, and I propose to dismiss it in the interest of justice.

Mr. Berg [FPD]?

MR. BERG: No objection.

THE COURT: Mr. Berry [AUSA]?

MR. BERRY: Your Honor, I would respectfully object.

(Emphasis added.)

A.

Duncan contends the Government failed to preserve its challenge to the dismissal, by failing to specify the bases for its objection. The Government responds that the *sua sponte* ruling at the hearing denied it notice of any basis for which it could make a more specific objection.

A specific objection is required to permit the court to hear argument on, and resolve, an issue. *E.g., **United States v. Burton***, 126 F.3d 666, 671 (5th Cir. 1997). But, the court raised the issue *sua sponte*; accordingly, the only issue at hand was dismissal *vel non* of the indictment "in the interests of justice"; and the Government objected to such dismissal. The objection was sufficient.

- 5 -

B.

We review *de novo* an "in the interests of justice" dismissal of an indictment*. Cf*. **United States v. Asibor**, 109 F.3d 1023, 1039 (5th Cir.) (reviewing *de novo* denial of motion to dismiss indictment for outrageous Government conduct), *cert. denied*, 522 U.S. 902 (1997); **United States v. Gonzalez**, 76 F.3d 1339, 1342 (5th Cir. 1996) (reviewing *de novo* denial of motion to dismiss indictment on double jeopardy grounds).

The district court cited *no* authority for dismissing the indictment.  In fact, one circuit has held that, "where the indictment is legally sufficient", a "district court may *not* dismiss it simply because it deems the dismissal to be in the interests of justice".  **United States v. Carrier**, 672 F.2d 300, 303-04 (2d Cir.) (emphasis added), *cert. denied*, 457 U.S. 1139 (1982).

A possible source of such dismissal-authority is the court's supervisory powers.  Along this line, the Supreme Court has identified "three purposes underlying use of" such powers, in the context of *reversing a conviction* (*not*, as here, dismissing an indictment):  "to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and ... as a remedy designed to deter illegal conduct".  **United States v. Hastings**, 461 U.S. 499, 505 (1983) (internal citations omitted).

Assuming *arguendo* such powers can be used for dismissal of an indictment "in the interests of justice", there was *no* warrant for doing so here. There is *no* holding that Duncan's rights were violated by the delay between the November 1995 conviction and July 1999 sentencing hearing. *See **United States v. Abou-Kassem***, 78 F.3d 161, 167 (5th Cir.) (seven year delay between conviction and sentencing *not* constitutional violation), *cert. denied*, 519 U.S. 818 (1996). Nor did the court rule that the evidence was insufficient to convict; the post-verdict motion for judgment of acquittal premised on that ground was *not* ruled on. In fact, at the February 1996 hearing, the court stated the evidence *was sufficient*. And, finally, Duncan does *not* claim the Government acted illegally in prosecuting him.

### III.

For the foregoing reasons, the dismissal is **VACATED** and this case is **REMANDED** for further proceedings.

*VACATED AND REMANDED*