**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William E. BLAKE et al., Defendants-Appellants.**

**No. 72–3817.**

United States Court of Appeals,
Fifth Circuit.

Nov. 27, 1973.

James D. Harris, Jr., Montgomery, Ala. (court-appointed), for Blake.

Joe F. Lassiter, Greenville, S. C. (Court-appointed), for Swartz.

Maurice J. Walsh, Carl M. Walsh, Chicago, Ill., for Maggio.

Ira DeMent, U. S. Atty., D. Broward Segrest, Kenneth Vines, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge and RONEY and GEE, Circuit Judges.

BROWN, Chief Judge:

*Will the real United States Merchant Marine please sail forward.*

Appellants have been convicted on seven counts of mail fraud (18 U.S.C.A. § 1341) and one count of conspiracy (18 U.S.C.A. § 371) in the operation of an alleged non-profit organization called the United States Merchant Marine (USMM). Lest we be misled, as the trial court and jury found USMM's subscribers to have been, the USMM here has no relation to the *real* United States Merchant Marine.[1] While we accept the

---

1. The term "United States Merchant Marine" is one which broadly covers the field of American Flag merchant vessels, their operation, regulation, documentation, transfer and availability for service in times of national emergency. Its role is epitomized at the top mast by the United States Merchant Marine Academy at Kings Point, New York, 46 U.S.C.A. § 1126 et seq., and the award of medals, 46 U.S.C.A. § 249. Various statutory provisions relating to the United States Merchant Marine include:

(1) 46 U.S.C.A. § 1101 Merchant Marine Act, 1936

Declaration of policy states: "It is necessary for the national defense and development of its foreign and domestic commerce that the United States shall have a merchant marine."

jury's finding that the scheme was fraudulent, and conclude the evidence if credited was sufficient to implicate them, the appellants Joseph J. Maggio and William E. Blake were denied a fair trial by the improper admission into evidence of certain telephone business records. Furthermore, we view the evidence as insufficient to support a conviction of appellant James F. Swartz. All three convictions are reversed and we remand for a new trial of Maggio and Blake.

The USMM was the realization of a long-awaited dream of Woodrow Wilson, Jr., a director of the corporation with the corporate endowed personal title of Commandant. Wilson was not present at the trial since as a fugitive he was making an extended stay in Mexico.[2] The purpose of the USMM was to provide a national computerized registration headquarters in Washington, D. C. for boatowners across the country to facilitate the location of stolen boats and motors.

The corporation conducted mass mailings to boatowners, notifying them that the USMM Office of Marine Registry was presently accepting applications for small craft, boats and motors. The fees were $5.00 for both a boat and motor or $3.00 separately. The cover letter and application, emblazoned with a convincing ensign very similar to that of the United States Coast Guard, listed its Washington, D. C. office as the "Headquarters Building."[3] To top off its nautical flavor the transmittal letter was signed by William E. Blake, with the seagoing title of Chief of Operations. The application form bore only one possible indication that the USMM was not a governmental agency. A statement at the bottom of the application form, in small type, stated that "This form does not exempt applicant from Federal, State or Local Regulations." Testimony was elicited from witnesses who had received applications, that they had returned them under the impression that it was a govermentally related agency and that registration was mandatory.

In viewing the evidence most favorable to the Government, we discern ample grounds on which the jury could have found the existence of a scheme to fraudulently induce registration. The adoption of the title United States Merchant Marine, use of nautical titles for the officers,[4] placement of an ensign on the letterhead, and a Washington, D. C. address as "Headquarters" are all indications that the enterprise was established with the purpose of misleading people by instilling the belief that the

(2) 46 U.S.C.A. § 1126 et seq.
United States Merchant Marine Academy to be maintained by the Secretary of Commerce at Kings Point, New York.
(3) 46 U.S.C.A. § 249
Merchant Marine distinguished service and meritorious service medals.
(4) 3 U.S.C.A. § 301 The President
E. O. No. 10661—Empowers the Secretary of Commerce to designate those persons who may be permitted to receive instruction at the United States Merchant Marine Academy.
(5) 14 U.S.C.A. § 211 Appointment of Officers
The President may appoint permanent commissioned officers of the Regular Coast Guard from among licensed officers of the USMM.
(6) 50 App.U.S.C.A. § 456
Deferments and exemptions from training and service for midshipmen of the USMM Reserve.

(7) 44 U.S.C.A. § 1907
Established library of USMM Academy as designated depository of Government publications along with U. S. Military Academy, U. S. Naval Academy, U. S. Air Force Academy, and the U. S. Coast Guard Academy.

2. Wilson was subsequently tried and convicted and this Court affirmed on appeal. United States v. Wilson, 5 Cir., 1973, 487 F.2d 510.

3. Indeed it was located in an office building known as "Headquarters Building."

4. In addition to bestowing the title of Commandant on Woodrow Wilson, the other officers, equivalents of corporate vice-presidents, held the various titles of "Vice-Commandant, USMM, Supplies and Accounts;" "Vice-Commandant, USMM, Operations;" "Chief of Operations, USMM;" and "Chief Supplies and Accounts, USMM."

USMM was a governmental agency with mandatory registration. The only question left to be answered is whether Maggio, Blake, and Swartz were properly shown to have been knowing and willing participants in the USMM scheme.

### Maggio

Joseph Maggio was an employee of National Systems and Service, Inc., of Rockford, Illinois, which contracted with USMM to perform the mass mailings. However, additional evidence was presented which indicated that Maggio was more closely associated with the activities of USMM. He was listed by Commandant Woodrow Wilson as a reference in renting the USMM headquarters, he acquired a bulk mailing permit in the name of USMM, he contacted the International Marine Boating Industry in Chicago claiming he represented the United States Coast Guard, he was seen at the "Headquarters" in Washington, and telephone records were produced at trial showing an extensive number of calls made between Maggio's home in Rockford and the USMM "Headquarters." This is the rub and nearly everything wrong that could have gone wrong in the proffer and receipt of the telephone records into evidence took place.

Because it is pertinent to the error in admission of evidence the other side of Maggio's picture revealed a classic case for jury resolution. On his theory, he was the wholly innocent independent contractor who was merely performing the common service indigenous to today's mass mailings of unsolicited pieces sometimes referred to as junk.

The records belonged to the Chesapeake & Potomac Telephone Company which services the Washington, D. C. area. The records [5] consisted of numerous pages of printouts which listed calls made to and from the headquarters number in Washington and Maggio's Illinois home phone. In response to a subpoena the C&P records were produced at trial by John W. Davis, Manager of the South Central Bell office in Montgomery, Alabama, site of the trial and 800 miles from the place where the records were kept. Davis testified that

---

5. The incriminating entries in the telephone records were summarized in a letter from Government counsel in response to the request made from the bench. He inspected the exhibits after the trial with Mr. Blake's attorney, James D. Harris, Jr. The exhibits not only contained records from the Chesapeake & Potomac Telephone Company but also records from the Illinois Bell Telephone Company and the Indiana Bell Telephone Company which were properly authenticated at the trial.

"Briefly summarized the telephone records reveal the following: Government Exhibit 52 contains the telephone records of the Chesapeake and Potomac Telephone Company for the listing of the United States Merchant Marine (Area Code 202 785-4587) beginning April 24, 1972, through November 21, 1972. The telephone records have been marked in pencil to indicate calls to Joe Maggio, (M) ; calls to William Blake, (B) ; calls to Metro Cable Company, (MC) and calls to James Swartz, (S). According to my tabulations the records reflect during the time period mentioned above 136 telephone calls from the United States Merchant Marine to appellant Maggio, 10 telephone calls to appellant Blake, 6 telephone calls to Metro Cable and 1 telephone call to appellant Swartz."

"Government Exhibit 49 is the records of the Illinois Bell Telephone Company for telephone No. 815 398-8726 with appellant Joe Maggio shown as the subscriber. These records show the telephone calls made from Mr. Maggio's number beginning May 24, 1972, through October 10, 1972, and show a total of 55 telephone calls to the United States Merchant Marine (shown in pencil on the records as USMM) and 6 telephone calls to the number subscribed to by William Blake (B)."

"Government Exhibit 50 is records of the Illinois Bell Telephone Company pertaining to No. 633-5500 which is shown as the number of the Rockford Community TV, Inc. and also Metro Cable Company. Exhibit 50 covers the time period beginning June 13, 1972, through August 8, 1972, and show a total of 4 telephone calls to the United States Merchant Marine (USMM)."

"Government Exhibit 54 is the records of the Indiana Bell Telephone Company pertaining to 879-5038 with William E. Blake as the subscriber and covering a period beginning April 28, 1972, and ending October 21, 1972. These records reflect 3 telephone calls to the United States Merchant Marine (USMM) and 3 telephone calls to appellant Maggio (M)."

he had obtained the records from his Security Manager, Howard H. Rice, who testified subsequently that he had received the records through the mails from the C&P Telephone Company's office in Washington, D. C.

While Davis stated that the records were similar to those kept by South Central Bell, there was no one present at the trial to explain the system under which the records were made, point out any possible errors, or allow the defense the opportunity to cross-examine. What was allowed at this trial was the admission of business records under the sponsorship of an employee of a subsidiary of a large corporation who had no knowledge as to the record's preparation. In view of the critical significance of all evidence bearing upon the extent of Maggio's activities in connection with the operation of USMM as well as the impressive nature and bulk of these records, we find that the Court's procedure for allowing the records into evidence as failing to comply with the proper rules for authentication of business records.

■ Liberal as we are to the fullest use of 28 U.S.C.A. § 1732, there are two prerequisites both of which are to be demonstrated to permit admission of business records. First, the Federal Business Records Act [6] states that the offeror must establish that the records were kept in the regular course of business. Louisville & Nashville Railroad Co. v. Knox Homes Corp., 5 Cir., 1965, 343 F.2d 887; United States v. Barson, 5 Cir., 1970, 434 F.2d 127, 128. Secondly, testimony must be given by a custodian adequately authenticating the record's accuracy and explaining the efforts employed to ensure this accuracy. United States v. Dawson, 2 Cir., 1968,

400 F.2d 194, 198–199, cert. denied, 1969, 393 U.S. 1023, 89 S.Ct. 632, 21 L. Ed.2d 567; Bridger v. Union Railway Co., 6 Cir., 1966, 355 F.2d 382, 391–392.

■ It is the circumstances under which the records are recorded, kept, maintained and used that gives the reliability essential to the law's conclusion that without any independent recollections by those who made the succession of entries they are reliable, precisely because the business relies on them for important business judgments. This principle of business acceptance was recognized by our Court in Missouri Pacific Railroad Co. v. Austin, 5 Cir., 1961, 292 F.2d 415, when we stated:

"In the approach of the Model Act trustworthiness comes from a record (1) regularly made in the course of a business, (2) if it is a part of the regular course of that business to record the event or transaction at or near the time of its occurrence. Most frequently the inquiry concerns the regularity of the making of that record in a particular business.

292 F.2d at 422.

■ While the trial court does have wide discretion in determining the admissibility of documents as business records, United States v. Middlebrooks, 5 Cir., 1970, 431 F.2d 299, 302, cert. denied, 400 U.S. 1009, 91 S.Ct. 569, 27 L. Ed.2d 622; McDaniel v. United States, 5 Cir., 1965, 343 F.2d 785, 788, cert. denied, 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed. 2d 71, there must be minimal authentication proof to give them reliability.

■ Over the pointed objection of Maggio's counsel not a single legal or factual theory was urged to suggest the admissibility of records whose only claim to authenticity came from the marks on

6. 28 U.S.C.A. § 1732
    (a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

them and the corporate relationship between the local voucher's employer and Chesapeake & Potomac Telephone Company. We cannot view this obvious error as harmless and therefore Maggio's conviction cannot stand.

### Blake

■ A review of the trial record shows that there was enough evidence on which the jury could have found that Blake was a participant in the scheme.[7] However, the C&P telephone records admitted at trial also contained listings of calls from the USMM headquarters to a phone in Indiana registered to appellant Blake.[8] While Blake's attorney did not preserve the error by objection, the impressive number of C&P telephone records, 10 from USMM to Blake and 136 to Maggio, and the nature of the crime being a conspiracy in which Maggio had so much to do, we cannot reject the possibility that the erroneous impression created by the records did not affect Blake. Therefore, he must be afforded the benefit of a new trial.

### Swartz

■ We find the evidence to be insufficient to justify the conviction of appellant Swartz in the perpetration of the scheme. While the name James Swartz appears on the Articles of Incorporation for USMM, there is only dubious evidence identifying the James Swartz on trial as the same James Swartz whose name appears on the incorporation document. The weakness of the Government's case is revealed by the fact that the Government handwriting expert could not even make a comparison of signatures since the Government electrostatic copy of the Articles was of such a poor quality. Only one Government witness identified the appellant at trial and that was John Toner, an employee of the National Bureau of Lathing and Plastering which officed in the same building as USMM. Toner stated that he had seen the appellant in the building where the USMM headquarters were located—but never in the USMM offices. At most all of the Government's case suggests is that Swartz rented some office furniture and hired a secretary—who could not identify the appellant at the trial as the man who had hired her.

The most convincing evidence that the appellant was connected with USMM was a record of 11 telephone calls between May and August of 1972. One call from the USMM headquarters went to the appellant's home and 10 calls were made to or from his place of business, Metro Cable Corporation. While these calls are sufficient to identify the appellant as USMM's Swartz, there was no other proof that the appellant was a participant in the conspiracy of mail fraud. No evidence was produced which proved that Swartz had any knowledge of the solicitation letter sent out by USMM. Even viewing the facts most favorable to the Government, the case was insufficient to justify a conviction of the appellant James Swartz.

---

7. As evidence of Blake's connection to the conspiracy, the Government raised the facts that Blake was shown as a director of USMM in the Articles of Incorporation and held the title of Director of Operations. He signed a request to open a bank account with Riggs Bank in Washington, D. C., for the USMM and personally signed a check to the USMM. His name was affixed to the letter of solicitation sent out for registrations. There were telephone records of calls made between April and September of 1972 from Blake's phone in Indiana to the USMM headquarters. Finally, the mysterious Woodrow Wilson informed the rental agent that the headquarters would be used by William E. Blake of 2921 Jackson Street, Michigan City, Indiana.

8. As summarized in note 5, *supra*, there were other calls to and from Blake's residence besides the 10 calls in the records of C&P. A total of 6 calls were in the records of Illinois Bell Telephone Company as having been made by Maggio to a number subscribed to by Blake. Additionally, the records of the Indiana Bell Telephone Company showed 3 calls to USMM by Blake and 3 calls to Maggio by Blake. The latter two records are not challenged on appeal since they were properly authenticated at trial by representatives from Illinois and Indiana.

■ Since Swartz did not file a motion for new trial, we reverse with directions to dismiss the indictment as to him. United States v. Musquiz, 5 Cir., 1971, 445 F.2d 963; United States v. Restano, 5 Cir., 1971, 449 F.2d 485.

Reversed with directions in part; reversed and remanded in part.