Revised July 8, 1999

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 98-30678

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PIERRE PARSEE; EVERETTE HARRISON,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana

June 15, 1999

Before REAVLEY, POLITZ, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Convicted by a jury of conspiracy to possess with intent to distribute cocaine,

21 U.S.C. § 846, Pierre Parsee and Everette Harrison appeal, challenging, *inter alia*,

certain **Batson**[1] and evidentiary rulings of the trial court.[2] For the reasons assigned,

---

[1] **Batson v. Kentucky**, 476 U.S. 79 (1986).

[2] They also challenge comments by the prosecutor during closing argument and the court's denial of their motions for judgment of acquittals, contentions which we find without merit and which do not warrant discussion.

we affirm.

## Background

In mid-August 1996 two local Louisiana officers made a traffic stop of a rental auto traveling east on Interstate 10 near the Texas-Louisiana line. A consensual search of the vehicle yielded nigh three kilograms of cocaine and 15 pounds of marihuana. The driver, Nicole Harrison,[3] confessed that she was delivering the drugs to New Orleans from Houston and she agreed to make a controlled delivery. Nicole was being followed closely by two other parties to the charged drug conspiracy, Parsee and Alvin Harvey.

Upon seeing Nicole stopped by the authorities, Parsee and Harvey called and advised Harrison, who had supplied the drugs. Harrison paged his cousin Nicole who was still with the authorities. She gave him a telephone number where she could be contacted and Harrison called her twice. The calls were recorded and played at trial. Harvey also paged Nicole and they had several telephone conversations which the authorities recorded. Parsee declined to speak to Nicole by telephone after he saw her apprehended by the officers and he sought to distance himself.

---

[3] For facility in explication, Nicole Harrison shall be referred to by her first name; defendant-appellant Everette Harrison shall be referred to as Harrison.

Nicole arranged to meet Harvey to deliver the drugs and when she did so they were arrested.[4] After their arrest they were separated and not permitted to communicate.

The evidence reflects the following relevant scenario. In early 1996 Parsee, who lived in New Orleans, ran into Nicole, a longtime acquaintance then living in Houston. He mentioned that he was seeking a drug supplier for his illicit operation. Nicole was aware of her cousin Harrison's activities and agreed to put the two in touch with each other. Parsee began recruiting help, bringing Harvey into the picture.

In late May 1996 Parsee was scheduled to fly to Houston to meet Harrison for a purchase. He was leery of flying with the large amount of cash needed for the purchase so he arranged for Harvey to wire the money to him in Houston. In an attempt to insulate himself he arranged for the funds to be wired to Nicole and one of Harrison's associates. Upon arriving in Houston, Parsee met with Nicole and then called Harvey to make the transfer. Harvey also desired insulation and had trouble getting someone to assist him by wiring the money. Finally he located random individuals outside of a Western Union office who agreed to wire the funds for a fee. The funds were finally wired and Nicole delivered same to Parsee who

---

[4] Both pled guilty to conspiracy charges. Neither conviction has been appealed.

completed the drug purchase from Harrison. As leery of flying with the drugs as he was of flying with the cash, Parsee persuaded Nicole to fly to New Orleans with the contraband. She did so using an alias.

During June and July 1996 there were several other transactions between Parsee and Harrison but the fund-wiring difficulties precipitated a new scheme. Nicole would rent a vehicle in Houston; drive to New Orleans and secure the cash for the transaction from Parsee; return to Houston, followed by Parsee and Harvey in Parsee's vehicle; rent a room at a hotel where Harrison, Parsee, and Harvey would conclude the transaction; and then drive the drugs back to New Orleans, again followed closely by Parsee and Harvey.

The evidence includes records for the autos leased by Nicole on the relevant dates, telephone and pager records revealing calls from Nicole's residence to Parsee's pager on the relevant dates, hotel records for rooms rented by Nicole in Houston on the dates in question, hotel records reflecting telephone calls from the rented rooms to a pager linked to Harrison, records of money transfers from New Orleans to Houston on the dates in question, and Parsee's employment records showing absences without excuse on the days that the illicit transactions occurred.

The first trial resulted in a deadlocked jury. On retrial, Parsee and Harrison were convicted of conspiracy with intent to distribute cocaine. They timely

appealed.

Analysis

## I. **Batson** challenges

Parsee and Harrison first contend that the district court erred in rejecting one of their peremptory challenges and in granting one made by the government. We find no merit in either contention.

In **Batson** the Supreme Court found that the peremptory challenging of prospective jurors solely on the basis of race violated the equal protection clause. The government excused six prospective jurors; five were African-American. Appellants invoked **Batson** and the district court rejected the government's reasons for excusing one of the five, reinstating that juror to the venire.

For the first time on appeal, appellants urge that the government impermissibly excluded a juror on the basis of her gender. The Supreme Court has extended the **Batson** rationale to prohibit exclusion of a prospective juror solely on account of gender.[5] To be timely, such a challenge must be raised before the venire

---

[5] **J.E.B. v. Alabama**, 511 U.S. 127 (1994).

is dismissed.[6] We may now reverse only if plain error was committed,[7] and only if that plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.[8]

In explaining its peremptory challenge the government referred to the prospective juror's position as a teacher of disabled persons, working where drug problems were common and in an area in which one of the appellants was raised. These explanations obviously are not related to gender and similar bases for excusal of a member of the venire have been upheld.[9] The jury selected was made up of four males and eight females, with two alternates, one of each gender. We perceive no error. Had there been an error we are not persuaded that it would have seriously affected the fairness, integrity, or public reputation of the proceedings.

In their use of peremptories the defendants excused ten jurors, all of whom were Caucasian. The government challenged these excusals and the court rejected the explanations offered and reinstated four. After reinstating the said four members of the venire, the court allowed the defense three more peremptory

[6] **United States v. Abou-Kassem**, 78 F.3d 161 (5th Cir. 1996).

[7] Fed.R.Crim.P. 52(b); **United States v. Stafford**, 136 F.3d 1109, as modified, 136 F.3d 1115 (7th Cir.), cert. denied, 119 S.Ct. 123 (1998).

[8] **United States v. Olano**, 507 U.S. 725 (1993).

[9] **United States v. Collins**, 972 F.2d 1385 (5th Cir. 1992).

challenges, all of which again were used on Caucasians.

Jury selection is largely a subjective process and the district court's ruling on a **Batson** challenge must largely turn on its credibility assessment of counsel's proffered reasons for the excusal.[10] The determination whether counsel used peremptory strikes in a discriminatory manner is not to be disturbed absent clear error.[11] We find no such error herein.

II. Evidentiary rulings

Appellants challenge a host of evidentiary rulings, contending that the court improperly admitted 404(b) evidence, lay witness testimony, and business records. We review for abuse of discretion.[12]

Appellants contend that the district court abused its discretion by admitting evidence of prior convictions and bad acts. Parsee, who did not testify, asserts that the court abused its discretion by admitting evidence of prior convictions for conspiracy to possess and possession with the intent to distribute cocaine, despite the government's asserted purpose of establishing intent, because the government

---

[10] **United States v. Kelley**, 140 F.3d 596 (5th Cir.), cert. denied, 119 S.Ct. 247 (1998).

[11] **Hernandez v. New York**, 500 U.S. 352 (1991); **United States v. Bentley-Smith**, 2 F.3d 1368 (5th Cir. 1993).

[12] **United States v. Navarro**, 169 F.3d 228 (5th Cir. 1999) (404(b) evidence); **Doddy v. Oxy USA, Inc.**, 101 F.3d 448 (5th Cir. 1996) (lay witness testimony); **United States v. Dixon**, 132 F.3d 192 (5th Cir. 1997) (business records), cert. denied, 118 S.Ct. 1581 (1998).

7

did not develop anything unique about the prior bad acts demonstrative of intent. Harrison, who did not testify, contends that the court abused its discretion by admitting a 1997 Texas state marihuana conviction as well as evidence of his alleged involvement in a Texas-Missouri cocaine conspiracy because the prejudicial effects of such admissions outweighed their probative value. Harrison advances dissimilarities between the facts surrounding his Texas conviction and the present charge and insists that the conviction is not relevant to his membership in the charged conspiracy.

Rule 404(b) of the Federal Rules of Evidence prohibits the admission of evidence of other crimes or bad acts to prove the character of a person. Such evidence may, however, be admitted to prove intent.[13] Whenever the issue of intent is material, entry of a not guilty plea raises that intent, justifying the admission of evidence of extrinsic acts.[14] Parsee and Harrison entered not guilty pleas. Further, regarding Harrison, the court noted some of the similarities between the offered acts and the allegations of the pending charge – trafficking offenses, marihuana, rental cars. Finally, the court instructed the jury that it could consider the bad acts only for the limited purpose of intent, thereby minimizing any prejudicial effect.

---

[13] Fed.R.Evid. 404(b).

[14] **United States v. Prati**, 861 F.2d 82 (5th Cir. 1988).

We perceive no abuse of discretion in admission of this evidence.

Appellants next contend that the court erred in admitting the testimony of Nicole regarding telephone conversations wherein a reference to "pants" was a coded reference to the drugs. Appellants maintain that the recorded conversations do not need this interpretive aid by the witness and is thus inadmissible under the prevailing rule.[15]

Rule 701 provides that if a witness is not testifying as an expert, testimony in the form of opinions or inferences is limited to opinions and inferences which are rationally based on the perceptions of the witness, and which are helpful to a clear understanding of that testimony, or the determination of a fact in issue. We conclude that both criteria were met here; the district court did not abuse its discretion in admitting Nicole's testimony about the coded telephone conversations.

First, Nicole was a participant in the conversations and she testified to her understanding of the communications; her testimony is rationally based on her perceptions.[16] Further, a portion of her testimony concerned a coded conversation

---

[15] Fed.R.Evid. 701.

[16] **United States v. Flores**, 63 F.3d 1342 (5th Cir. 1995) (determining that a rational basis exists when a conspiracy member discusses the content of a conversation about events with which he obviously is familiar).

and her explanation aided the jury's understanding.[17] Finally, appellants had ample opportunity to cross-examine Nicole; the jury responsibly could assign the proper weight to her testimony. We discern no abuse of discretion in the admission of this testimony.

Appellants next contend that the trial court erred by admitting various business records[18] because the company gathering the records was not the company offering same at trial. We are not persuaded.

As we noted in **Dixon**, "any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records."[19] The primary emphasis of Rule 803(6) relates to the trustworthiness of the records at issue and

---

[17] **Id.** at 1359 (determining that testimony is helpful when "tapes did not always speak for themselves [because conspirators] disguise[d] the topic of discussion [by] pepper[ing] their discourse with code phrases and oblique references"); **United States v. Griffith**, 118 F.3d 318, 321 (5th Cir. 1997) (There is a "specialized jargon endemic to the illegal drug distribution industry. A primary purpose of this jargon is to conceal from outsiders, through deliberate obscurity, the illegal nature of the activities being discussed. Drug traffickers will often refer to ordinary items of commerce in lieu of illegal narcotics.").

[18] Fed.R.Evid. 803(6).

[19] **Dixon**, 132 F.3d at 197.

the trial court has great latitude in resolving this issue of trustworthiness.[20]

Appellants made no attack on the information contained in the records and offered no credible reason to doubt their trustworthiness. The challenged records were duly authenticated and kept in the regular course of business. This general challenge to all of the records is therefore rejected.

Appellants specifically challenge the vehicle rental records because they were created by one subsidiary of Enterprise but were offered by a different subsidiary. They rely on **United States v. Blake**[21] for the proposition that a co-subsidiary relationship is insufficient to allow the custodian of one subsidiary to offer the records of a different subsidiary. In **Blake** the records at issue were created by Chesapeake & Potomac Telephone Company and were offered by a manager of South Central Bell.[22] We found that the admission of the records was an abuse of discretion because the manager could not explain the system by which the data were generated, point out possible errors, or respond meaningfully to questions posed on cross-examination.[23] That is not the situation in the case at bar.

---

[20] **United States v. Duncan**, 919 F.2d 981 (5th Cir. 1990).

[21] 488 F.2d 101 (5th Cir. 1973).

[22] **Id.** at 104.

[23] **Id.** at 105.

11

The questioned records herein were generated by Enterprise Leasing Company of Houston and offered by Enterprise Leasing Company of New Orleans where the trial was conducted. Both are subsidiaries of Enterprise Rent-A-Car in St. Louis. Unlike in **Blake**, the witness herein testified that the records in all Enterprise offices nationwide are generated and maintained in the same manner. The witness understood and could explain the system, point out any errors, and meaningfully respond to questions on cross-examination. The court did not abuse its discretion in admitting the vehicle rental records.

Appellants further contend that the telephone records should not have been admitted because representatives of regional Bell operating companies offered the records but the information contained therein was collected and generated by long distance carriers. This assignment of error is without merit. The evidence reflects that the regional companies bill customers for services provided by the long distance carriers. The evidence also established, however, that the long distance carriers collect and generate data concerning long distance calls and the regional carriers do likewise. Admission of these records was not an abuse of discretion.

Nor do we find any error in the admission of the records tying a material beeper to Parsee or in the admission of the records reflecting beeper information on Harvey who testified for the prosecution and identified his pager and the

pertinent information.

Finally, appellants challenge the Western Union records relating to money wired from New Orleans to Houston. The records were not offered to prove the identities of the senders, but to confirm that in excess of $16,000 was transferred from New Orleans, as attested to by Harvey, to Houston, as claimed by Nicole. The identities of the senders were not at issue, only that Harvey directed individuals to wire the money to Houston. Allowance of the introduction of these records was not an abuse of discretion.

For these reasons, the convictions and sentences are AFFIRMED.