IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 7, 2008

Charles R. Fulbruge III
Clerk

No. 04-51138

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JAIME DURAN FLORES

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 7:04-CR-67-4

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Jaime Flores was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government presented circumstantial evidence against Flores, and a jury found him guilty as charged. Flores appeals his conviction and sentence. We hold that the district court committed no error, and we therefore AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Flores was indicted for being a felon in possession of a firearm. The indictment alleged that, having been convicted of a felony, he possessed a firearm on or around February 11, 2004 in Midland, Texas. He pled not guilty and was tried before a jury. The evidence against Flores was, as the Government acknowledged at trial, circumstantial. Most of the facts of the case are undisputed by Flores, except for the ultimate conclusion that he in fact possessed the firearm at issue.[1]

At trial, the Government introduced the testimony of Roy Harrell, the owner of the gun Flores was alleged to have possessed. Harrell testified that, on the evening of February 11, 2004, he placed his pistol on a chair in his den. That evening, he was visited by Kimberly Montgomery and a man she introduced as her brother, Marc. Upon Montgomery's request, Harrell went outside to inspect Montgomery's car, which had been in a collision. Marc stayed in the den. After his visitors had left, Harrell noticed that the pistol was missing and called the police.

Montgomery testified that, "somewhere around" 7:30 or 8:30 P.M., she traded the firearm to Manuel Antonio Mata, for one hundred dollars' worth of heroin. Montgomery testified that she went to Mata's house, then accompanied him to his vehicle and placed the gun in the vehicle. During the exchange, Mata made a phone call from his cell phone, speaking in Spanish. Phone records show that Mata made a call to the number of Flores's common law wife at 7:19 P.M., around the time Montgomery was with Mata.

Sergeant Mitch Russell testified that he interviewed Montgomery on the day after the theft, February 12. After interviewing her associate Marc,

---

[1] The Government introduced evidence that the pistol had traveled in interstate commerce and that Flores had been convicted of three felonies. Flores's counsel offered to stipulate to the felonies, but agreed that the Government's witness could testify to the names and dates of the convictions. Flores does not contest these elements of his offense on appeal.

Sergeant Russell spoke to Mata. Russell told Mata that the police needed the gun that had been stolen from Harrell. Russell testified that Mata then made a phone call on his cell phone.[2] Russell could tell that Mata and the male recipient of the call were speaking English and Spanish. Mata's phone records reflect that the call lasted approximately eleven minutes and that the call was made to the number of Flores's common law wife. Sergeant Russell testified that, immediately after making the outgoing call, Mata went with Officer Debbie Barnes to the Coventry Pointe Apartments to retrieve the pistol. They returned fifteen minutes later with the missing pistol. Russell testified that the Coventry Pointe Apartments were located on a street one to one-and-a-half blocks from Flores's home.

Officer Barnes testified that she assisted Sergeant Russell in locating a missing gun. Barnes testified that, during the investigation on February 12, she observed Mata speaking on his cell phone with a man Barnes understood to know the whereabouts of the gun. Barnes and another officer went to the Coventry Pointe Apartments in Midland to pick up the gun. She and the other officer searched the dumpsters behind the apartments for the missing gun. She was looking in one dumpster and the other officer looked in another. Barnes found the gun in a Toys 'R' Us bag, and ultimately released it to Sergeant Russell. The pistol was found wrapped in a Wendy's bag, inside the Toys 'R' Us bag. The pistol was identified as the one stolen from Roy Harrell.

The Government relied on two items of circumstantial evidence to connect the defendant Flores to the pistol. First, Sergeant Russell identified in Mata's phone records a call placed at 7:19 P.M. on February 11 to a phone number registered to Flores's common law wife and that Flores listed as his own when admitted into jail. Sergeant Russell also identified a call that Mata made to the

---

[2] Mata did not testify, and no direct evidence of the content of his phone call was introduced.

same number at 11:19 P.M. on February 12, during the time Sergeant Russell was questioning Mata. He identified the 11:19 call as the call Mata placed immediately before going with officers to retrieve the stolen firearm.

Second, the Government introduced evidence that the Toys 'R' Us bag in which the gun was found also contained a receipt, marked with a time and date corresponding with the time and date of surveillance footage of Flores and a child making a purchase at the Midland Toys 'R' Us.

The Government's theory of the case was that, when Mata called Flores while the police questioned him, Flores told Mata where the pistol was. The Government asked the jury to infer that Flores put the pistol in the dumpster.

Flores testified in his own defense. His attorney asked if he had been in any trouble since he got out of prison after a 1989 felony conviction, and Flores replied that he had not. Flores testified that Mata was his childhood friend, the godson of Flores's own father. Flores testified that he associates with Mata and speaks to him frequently, attempting to get Mata off drugs. Flores also testified that Mata came to his house on or around February 11 or 12 and wanted Flores to purchase a gun. Flores testified that he said to Mata: "I can't possess no guns, to get that gun away from there." He testified that he never saw or handled the gun.

Flores further testified that he had purchased a video game for his grandson at Toys 'R' Us. He testified that the Toys 'R' Us bag in which the pistol was found had meaning to him because Mata asked him for a bag the day that he came to Flores's house. Flores testified that he spoke with Mata on the phone around 11:00 P.M. on February 12, but that the conversation was about Mata "trying to get a job back with us" at the construction company where Flores worked. He testified that there was no discussion about recovering the gun.

On cross-examination, Flores admitted that he pled no contest and was convicted in 1992 of unlawfully carrying a weapon and evading detention, for

4

which he served one day in jail. He also was convicted in 1993 of possession of marijuana, for which he was given a $250.00 fine. He admitted that the statement that he had been a law-abiding citizen since 1989 was a lie to the jury. Flores also admitted that he was not truthful to his parole boards when he told them that he would not commit any more offenses, but later did.

The jury found Flores guilty of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Flores within the Sentencing Guidelines range to 86 months of imprisonment.

## II.

Flores raises a number of challenges to his conviction. He contends that the prosecution used peremptory challenges to strike Hispanic jurors in violation of Batson v. Kentucky, 476 U.S. 79 (1986). Flores also contends that the evidence against him was insufficient to support his conviction. He contends that the district court erred in admitting testimonial hearsay in violation of Federal Rule of Evidence 802 and also in violation of the Confrontation Clause of the United States Constitution. Flores also contends that his sentence is unreasonable. Finally, Flores contends that he received ineffective assistance of counsel.[3]

## III.

## A.

Flores contends that the prosecution used its peremptory strikes effectively to exclude all potential jurors with Hispanic last names in violation of the Equal Protection Clause, as explained in Batson. Flores did not raise this claim in the district court. We have held that "because a timely objection is an essential prerequisite to a Batson claim," a defendant is not entitled to raise a Batson claim on appeal if he did not object to the prosecutor's use of peremptory challenges in the district court. United States v. Pofahl, 990 F.2d 1456, 1465

---

[3] Flores has expressly abandoned his claims based on Old Chief v. United States, 519 U.S. 172 (1997).

(5th Cir. 1993). We have held that a Batson challenge must be made before the venire panel is dismissed.[4] United States v. Abou-Kassem, 78 F.3d 161, 167 (5th Cir. 1996). See also Thomas v. Moore, 866 F.2d 803, 805 (5th Cir. 1989) ("A timely objection and the corresponding opportunity to evaluate the circumstances of the jury selection process are essential to a trial court's reasoned application of the limitations placed on peremptory challenges by the Batson holding."). In fact, we have held that the trial court should note the untimeliness of a Batson challenge made after the venire is dismissed and reject the challenge sua sponte if the party opposing the motion does not object. Garcia v. Excel Corp., 102 F.3d 758, 759 (5th Cir. 1997). We will not address this claim raised for the first time on appeal.

## B.

Flores contends that the evidence against him is insufficient to support his conviction. He moved for judgment of acquittal at the close of the Government's case and renewed his motion at the end of trial. Because he properly preserved the objection, our review is de novo. United States v. Williams, 520 F.3d 414, 420 (5th Cir. 2008). We will affirm if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc). The evidence and all reasonable inferences drawn from it are to be viewed on appeal in the light most favorable to the Government. Id. "In addition, all credibility determinations are made in the light most favorable to the verdict." United States v. Moreno, 185 F.3d 465,

---

[4] United States v. Parsee, 178 F.3d 374, 378 (5th Cir. 1999), may be distinguished. In Parsee, the defendant made a Batson claim on the basis of racial discrimination at the appropriate time. Id. On appeal, the defendant raised a gender-based claim, and we stated that we would review the new basis for the Batson claim for plain error. Id. at 378-79. Here, Flores made no Batson claim at all in the district court. Moreover, to the extent that Parsee is inconsistent with our earlier precedents holding that Batson claims may not be heard on appeal if not timely brought, the earlier precedent controls. See e.g., United States v. Walker, 302 F.3d 322, 325 (5th Cir. 2002).

471 (5th Cir. 1999). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. " United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998) (citation and internal quotation marks omitted). However, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," we should reverse because "under these circumstances a reasonable jury must necessarily entertain a reasonable doubt." United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999) (citations and some internal quotation marks omitted).

To establish a violation of § 922(g)(1), the Government has the burden to prove beyond a reasonable doubt: "(1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005). Flores does not dispute on appeal that he had been convicted of a felony or that the firearm at issue traveled in interstate commerce. His sole challenge is to the sufficiency of the Government's evidence that he possessed a firearm.

Possession may be actual or constructive. United States v. Munoz, 150 F.3d 401, 416 (5th Cir. 1998). "Actual possession means the defendant knowingly has direct physical control over a thing at a given time. Constructive possession means ownership, dominion or control over a thing, or control over the premises where the thing is found." Id. (citations omitted). Possession may be shown through either direct or circumstantial evidence. Id.

In this case, the Government did not attempt to show that Flores had dominion or control over the firearm at issue or controlled the premises where it was found. Instead, it attempted to show, through circumstantial evidence, that Flores actually possessed the firearm at issue and had direct physical

7

control over it at some point on or around February 12. While it is true possession may be proved by circumstantial evidence, that evidence must still be sufficient to support the verdict. We have held, for example, that evidence of a felon's thumb print on a box of ammunition found in his girlfriend's home was insufficient on its own for a reasonable jury to find actual possession. United States v. De Leon, 170 F.3d 494, 497 (5th Cir. 1999) (holding nevertheless that the evidence supported a theory of constructive possession).

In this case, the jury was presented with two interpretations of the evidence. The Government's interpretation was that Mata gave or sold the weapon to Flores, later called Flores to determine where the weapon might be found, and then led police to the dumpster near Flores's home in which Flores had placed the weapon. This interpretation of the evidence is not unreasonable. Thus, there is circumstantial evidence that suggests that Flores possessed the firearm: Mata called Flores in response to the police officers' demand that he, Mata, return the gun; Mata promptly took the police to retrieve it; and the gun was found near Flores's apartment in a bag Flores had recently possessed. Although the circumstantial evidence does not require a conclusion that Flores possessed the gun, we cannot say that it gives equal or nearly equal support to a theory of innocence. Additionally, the jury was entitled to consider and reject Flores's testimony explaining his lack of connection with the gun.

Flores's explanation of the evidence was that he never possessed the weapon. Mata offered it to him, but he refused it. Mata called him while police were questioning him, but the conversation was about Mata trying to get a job at Flores's place of employment. Although the Toys 'R' Us bag was his, Mata had asked for it when he came to Flores's apartment with the gun. Although Flores's version of the story is not directly contradicted by any evidence, in the light of all of the circumstances, it can be seen as less plausible than the Government's interpretation.

Furthermore, Flores's dubious explanation of his phone conversation with Mata can be seen to bolster the prosecution's theory of the case—especially because it removes from contention other possible explanations for the phone call, for example, that Flores merely knew for some reason where the firearm was, but had never actually possessed it. It is true that we have held that a denial of guilt cannot be treated as evidence of guilt. However, when a defendant goes further than a denial and gives an implausible or controverted alibi or explanation, his testimony may be considered evidence of consciousness of guilt. See United States v. Sutherland, 428 F.2d 1152, 1157 (5th Cir. 1970) (holding that the defendant's alibi, rebutted by the Government, could be evidence of guilt); see also United States v. Hunt, 129 F.3d 739, 744 (5th Cir. 1997) (acknowledging Sutherland rule and holding that denial of use of crack could not lead to inference that defendant intended to distribute crack). Here, the circumstantial evidence against Flores, although not eliminating every hypothesis of innocence, is quite sufficient to allow the jury to make reasonable choices that could support a finding of guilt beyond a reasonable doubt. Furthermore, Flores's testimony could bolster the circumstantial evidence of guilt by excluding some more plausible hypotheses of innocence. Although the evidence against Flores may not suggest only one doubtless and irrefutable conclusion, we review the jury's verdict with great deference and conclude that the evidence is substantial enough to protect a finding of guilt.

## C.

We now turn to Flores's arguments under the hearsay rule and the Confrontation Clause. Flores first contends that evidence that Mata made a phone call to Flores and then directed officers to the dumpster containing the firearm was nonverbal assertive conduct. He argues that it permits the inference that Mata told the officers that Flores told him the location of the firearm, and therefore amounts to hearsay evidence.

During the trial, Sergeant Russell was asked what he told Mata when investigating the missing firearm. Russell answered, "That we needed the gun back that had been stolen from Mr. Harrell, that we knew—I knew that he had been involved in it." Flores made an objection to testimony relating anything that Mata had said, and the court sustained the objection. The Government asked what Mata did next. Sergeant Russell testified that Mata made a call from his cell phone. Flores objected to Russell's testimony that Mata spoke in English and Spanish. The objection was overruled. The Government then asked what Mata did immediately after the call, and Russell replied that Mata "[w]ent with Officer Barnes to the Coventry Pointe Apartments to retrieve the pistol." Officer Barnes testified similarly that Mata made a phone call and subsequently assisted her in locating the firearm. The district court sustained Flores's hearsay objection to testimony regarding what Mata said during the phone call. Flores contends that the preceding evidence is identical in substance to the police officers testifying that "Mr. Mata told me that Mr. Flores said the firearm was in the dumpster."

Flores did not make a hearsay objection to testimony about Mata's nonverbal acts. Therefore, we review for plain error. See e.g., United States v. Mendoza-Medina, 346 F.3d 121, 131 (5th Cir. 2003). To establish plain error, Flores must show an error that is clear and obvious and that affected his substantial rights. United States v. Cisneros-Gutierrez, 517 F.3d 751, 760 (5th Cir. 2008). We will exercise discretion to correct the forfeited error only "if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Hernandez-Martinez, 485 F.3d 270, 273 (5th Cir. 2007).

Here, Flores has shown no error, plain or otherwise, in the admission of Sergeant Russell's testimony regarding Mata's actions. The Government did not present hearsay evidence. Federal Rule of Evidence 801(c) defines hearsay as

a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" under Rule 801(a) is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." We have held that Rule 801 removes implied assertions from the coverage of the hearsay rule. United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990) (holding that the question "Did you get the stuff?" was not a statement and therefore not hearsay).

Here, the Government did not introduce evidence of a "statement" made by Mata, under the meaning of Rule 801. Mata's actions following his phone call were not an assertion or conduct intended as an assertion.[5] Although it may be reasonable to draw the conclusion that Mata learned the location of the firearm from his conversation with Flores, the prosecution did not present evidence that Mata asserted this conclusion or intended by his actions to do so. The contested evidence is therefore not hearsay, and Flores has shown no plain error.

Flores also contends that evidence concerning Mata's phone call and subsequent conduct violated the Confrontation Clause, as articulated in Crawford v. Washington, 541 U.S. 36 (2004). We review properly preserved Confrontation Clause objections de novo, subject to harmless error analysis. United States v. Pryor, 483 F.3d 309, 312 (5th Cir. 2007).

Under Crawford, testimonial statements of a witness not appearing at trial may not be admitted unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 55-56. In

---

[5] This case is therefore unlike cases in which we have held that pointing to or pointing out something can, in some circumstances, be nonverbal hearsay. See United States v. Caro, 569 F.2d 411, 417 n.9 (5th Cir. 1978) (holding that pointing out a vehicle containing the defendant's source was assertive conduct); United States v. Silvas, No. 92-5586, 1993 WL 261046, at *3 n.2 (5th Cir. June 29, 1993) (unpublished) (holding that pointing to a hole in the ground containing the proceeds of a robbery was a statement for purposes of Rule 801(a)(2)).

Crawford, the Court eschewed a comprehensive definition of "testimonial," but referenced a definition of "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51. The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Id. at 59 n.9.

Mata's actions—making a phone call to Flores and going with police to retrieve the missing firearm—are not testimonial statements prohibited by the Confrontation Clause. See United States v. Lopez-Moreno, 420 F.3d 420, 436 (5th Cir. 2005) (holding that photocopy of an identification card does not qualify as a testimonial statement because it "in no way involves a witness bearing testimony"); see also United States v. Washington, 498 F.3d 225, 230 (4th Cir. 2007) (stating that "while the hearsay rules of the Federal Rules of Evidence do not formally demarcate the scope of 'statements' for Confrontation Clause purposes, we take [the definition of statement in Rule 801(a)] to be uncontroversial"). Mata's actions were neither a declaration nor an affirmation and do not resemble a witness bearing testimony. Because his actions are not evidence of assertions made by Mata, they were not introduced for the purpose of establishing the truth of a matter asserted. The district court did not err in allowing evidence of Mata's actions.

Flores also contends, as he did in the district court, that the admission of Mata's cell phone records showing the numbers called during the dates surrounding the firearm's theft and recovery violates the Confrontation Clause. However, the phone records were business records, which the Crawford Court noted are not testimonial in nature. 541 U.S. at 56; see also Lopez-Moreno, 420 F.3d at 437 (holding that records from the Bureau of Customs and Immigration's computer system showing dates of deportation were akin to business records and

not barred by the Confrontation Clause). Therefore, the admission of the records did not violate Flores's constitutional rights.[6]

D.

Flores contends that his sentence of 86 months of imprisonment is unreasonable. His sentence was in the middle of the Sentencing Guidelines range of 77-96 months. Flores contends that the district court did not consider the nature and characteristics of his offense, as required by 18 U.S.C. § 3553(a). Alternatively, Flores argues that the district court abused its discretion in sentencing him in the middle of the Guidelines range, rather than at the lower end. Flores also contends that the district court failed to adequately explain its sentence.

Flores made no objections to his sentence in the district court, so we review for plain error. See United States v. Molina, 530 F.3d 326, 329 (5th Cir. 2008). We apply a presumption of reasonableness when reviewing sentences within a properly calculated Guidelines range. See, e.g., Cisneros-Gutierrez, 517 F.3d at 766.

In Rita v. United States, 127 S.Ct. 2456, 2468 (2007), the Supreme Court stated that consideration of § 3553(a) factors does not always require a lengthy explanation on the record and that, in many cases, the sentencing court may rest its decision upon the Commission's reasoning that the Guidelines sentence adequately accounts for the § 3553(a) factors in the case before him. A lengthier explanation may be required when the defendant makes a reasonable argument against applying the Guidelines sentence. Id.

---

[6] Flores argues that the phone records should have been inadmissible on the additional ground that they were subpoenaed after trial exhibits were to be exchanged and not produced until days before trial. Even if the Government had violated the district court's discovery order, this court has held that the district court has broad discretion in responding to discovery abuses. United States v. Martinez-Perez, 941 F.2d 295, 302 (5th Cir. 1991). Flores has not shown that the district court abused its discretion here.

The district court here reviewed the presentence report, found it to be accurate and correct, and adopted its findings and Guidelines calculation. The court noted the sentences imposed on two of the other parties involved, Mata and Montgomery, and judged Flores's sentence to be appropriate. No arguments were made against applying the Guidelines sentence. Flores only requested a sentence at the low end of the Guidelines range because he had turned his life around since his earlier convictions. We hold that Flores has not overcome the presumption that his sentence within the correct Guidelines range is reasonable and has not demonstrated any plain error in his sentence.

E.

Flores argues that his counsel was ineffective in failing to raise his Batson claim and in other respects. We have held that "Sixth Amendment claims of ineffective assistance of counsel should not be litigated on direct appeal, unless they were previously presented to the trial court." United States v. Aguilar, 503 F.3d 431, 436 (5th Cir. 2007) (quoting United States v. Partida, 385 F.3d 546, 568 (5th Cir. 2004)). We will only consider such claims on direct appeal in rare cases in which the record allows the court to fairly evaluate the merits of the claim. Flores's claim was not presented to the trial court, so we will not consider it on direct appeal.

IV.

For the foregoing reasons, Flores's conviction and sentence are

AFFIRMED.